IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:21-CV-372-RJ

KATHY FAISON,

          Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-14, -16] pursuant to Fed. R. Civ. P. 12(c). Claimant Kathy Faison ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion, and the time for filing a reply has expired. [DE-18]. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on October 7, 2015, alleging disability beginning September 29, 2015. (R. 14, 200–09). Both claims were denied initially and upon reconsideration. (R. 14, 62–119). A hearing before Administrative Law

Judge Miller ("ALJ") was held on May 31, 2018, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 14, 31–61). On September 17, 2018, the ALJ issued a decision denying Claimant's request for benefits. (R. 11–30). On April 18, 2019, the Appeals Council denied Claimant's request for review. (R. 1–7).

Claimant protectively filed a second application for a period "of disability" and DIB on May 14, 2019, also alleging disability beginning September 29, 2015. (R. 1172). An administrative hearing was held before ALJ Wordsworth on June 11, 2020, at which Claimant, represented by an attorney, and a VE appeared and testified. *Id.*[1] On July 10, 2020, ALJ Wordsworth issued a decision awarding benefits beginning September 18, 2018. (R. 1168–88).

On June 12, 2019, Claimant brought an action in this court challenging the Commissioner's September 17, 2018 final decision denying her claims. (R. 1162–67); *Manns v. Saul*, No. 5:19-CV-240-BO, 2020 WL 4607313 (E.D.N.C. Aug. 11, 2020). On August 10, 2020, the court remanded the Commissioner's decision for further proceedings due to erroneous weighing of the Department of Veterans Affairs ("VA") Disability Rating. (R. 1189–93); *Manns*, 2020 WL 4607313. On November 30, 2020, the Appeals Council vacated and remanded the case to an ALJ to issue a new decision. (R. 1196–1201).

An administrative hearing was held by ALJ Wordsworth on April 20, 2021, at which Claimant, represented by counsel, and a VE appeared and testified. (R. 1108–34). On May, 25, 2021, ALJ Woodsworth issued a decision denying Claimant's request for benefits for the period of September 29, 2015 through September 17, 2018. (R. 1086–1107). The Appeals Council did not assume jurisdiction, and Claimant then filed a complaint in this court on September 16, 2021, seeking review of the now-final administrative decision.

---

[1] The transcript is missing from the record, but it is not necessary for the court's decision.

2

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in

3

severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ misevaluated the Agency's prior determination; (2) the ALJ erred in failing to give substantial weight to the Department of Veteran's Affairs disability rating; (3) the ALJ's appointment violated the Appointments Clause; and (4) the structure of the Social Security Administration is constitutionally invalid. Pl.'s Mem. [DE-15] at 4–28; Pl.'s Resp. [DE-18] at 1–6.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

4

gainful activity since September 29, 2015, the alleged onset date. (R. 1092). Next, the ALJ determined Claimant had the following severe impairments: lumbar spine degenerative disc disease; obesity; post-traumatic stress disorder (PTSD); depressive disorder; and bipolar disorder. *Id.* The ALJ also found Claimant had nonsevere impairments of headaches, carpal tunnel syndrome, and gastroesophageal reflux disease. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1092–94). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in a mild limitation in understanding, remembering, or applying information; moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 1093–94).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] requiring the following limitations:

> [T]he claimant can only occasionally climb stairs and ramps; she can never climb ladders, ropes or scaffolds; she can occasionally balance, crouch, stoop, kneel and crawl; she can occasionally push and/or pull with the left lower extremity; she must avoid concentrated exposure to extreme temperatures, vibrations, and work place hazards that include unprotected heights and moving machinery; she can perform simple, routine and repetitive tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes with reasoning levels of one or two and she can have occasional contact with supervisors, co-workers and the public.

(R. 1095–99). In making this assessment, the ALJ found Claimant's statements about her

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

limitations not entirely consistent with the medical and other evidence. (R. 1095–96).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a title searcher. (R. 1099–1100). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 1100–01).

## V. DISCUSSION

### A.    The ALJ's Evaluation of the Agency's Prior Decisions

Claimant contends that ALJ Wordsworth misevaluated the Agency's prior decisions, particularly by relying heavily on the September 17, 2018 decision of ALJ Miller. Pl.'s Mem. [DE-15] at 4–7. Claimant argues that this decision, which was vacated by the court on August 10, 2020, and then vacated by the Appeals Council on November 30, 2020, was thus not a "final decision" and was not entitled to any weight under the regulations. *Id.* at 5. However, Claimant states ALJ Wordsworth indicated that "the previous findings of the claimant's residual functional capacity is entitled to great weight in accordance with Acquiescence Ruling 00-1(4)[…]" *Id.* (citing (R. 1099)). Claimant contends that neither AR 00-1(4) nor *Albright*, 174 F.3d at 473 applies to the vacated and remanded decision. *Id.* at 5–6.

Defendant, on the other hand, admits that ALJ Wordsworth improperly considered the prior vacated decision. However, Defendant argues that "given that the ALJ found Plaintiff has a more restrictive RFC to better account for the cumulative effects of her impairments, which is beneficial to Plaintiff, this is a harmless error." Def.'s Mem. [DE-17] at 26–27.

Claimant responds that any error was not harmless because ALJ Wordsworth could have reached a different conclusion had the ALJ not relied so heavily on the vacated 2018 decision,

stating "errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." Pl.'s Resp. [DE-18] at 5–6. (citing *Suggs v. Astrue*, No. 4:11-CV-128-FL, 2013 WL 466406, at *4 (E.D.N.C. Feb. 7, 2013)). Claimant contends further that ALJ Wordsworth did not adequately address the ambiguity between finding Claimant disabled in her 2020 decision, starting the day after the period at issue here, yet finding Claimant was not disabled in the 2021 decision. *Id.* at 6. Finally, if ALJ Wordsworth did not weigh this decision at all, Claimant argues, that is also reversible error. *Id.*

In *Albright*, the claimant sought disability benefits after sustaining neck and lower back injuries from a work-related automobile accident and a subsequent traffic accident. 174 F.3d at 474. The ALJ denied the claim, finding that "any lingering impairment was 'not severe,'" and the claimant's testimony regarding the intensity of his pain was not credible. *Id.* Albright did not appeal, but instead filed a new claim for the period following the ALJ's prior decision. *Id.* A different ALJ determined, based on the Fourth Circuit case of *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987) and its purported codification in AR 94-2(4), that he was required to adopt the findings of the sequential evaluation process from the prior claim unless there was new and material evidence relating to that finding. *Albright*, 174 F.3d at 474–75. Concluding there was no new and material evidence, the ALJ denied the claim and the Appeals Council denied review. *Id.* at 475. On appeal to the district court, the magistrate judge determined that the agency in AR 94-2(4) had interpreted *Lively* too broadly and the district court agreed, remanding Albright's claims for reconsideration. *Id.* The court of appeals affirmed the district court, holding that the agency impermissibly merged the claimant's two claims into one in contravention of the agency's "traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as res judicata) do not apply." *Id.* at 476. The court went on the explain

7

that "[i]n practice, then, AR 94-2(4) carves out an exception to the general rule that separate claims are to be considered separately." *Id.* In doing so, the *Albright* court distinguished the *Lively* case[3] on which AR 94-2(4) was premised, rejected AR 94-2(4) as erroneously restating the holding in *Lively*, and determined Albright's claims were not barred by the ruling in his prior case. *Id.* at 477–78.

As a result of *Albright*, the agency issued AR 00-1(4), which rescinded AR 94-2(4) and interpreted *Albright* to hold as follows:

> [W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000). When weighing a prior finding, an ALJ should consider:

> (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

*Id.* An ALJ does not have to explicitly discuss each factor or state the weight given to each previous finding in order to comply with AR 00-1(4); rather, it must be clear that the ALJ

---

[3] In *Lively*, the claimant was found to have the RFC to perform light work, and his claim was denied. *Albright*, 174 F. 3d at 475. However, two years later after Lively became 55 years of age, which potentially would have resulted in an award of benefits with an RFC for light work, Lively reapplied for benefits; however, the ALJ denied the claim based on the finding that Lively had the RFC to perform medium work. *Id.* The court of appeals determined that the prior finding that Lively was capable of only light work was "highly probative" but "not conclusive" and "had the agency produced substantial evidence of improvement in Lively's condition 'to indicate that [he] was capable of performing medium work,' the prior finding to the contrary need not have been sustained." *Id.* at 477 (quoting *Lively*, 820 F.2d at 1392) (footnote omitted).

8

considered the previous determination when evaluating the entire record. *Melvin v. Astrue*, 602 F. Supp. 2d 694, 702 (E.D.N.C. 2009) ("Although the ALJ did not specifically refer to AR 00-1(4) . . . or explain the precise weight he gave the ALJ's findings . . . the ALJ did *consider* the prior ALJ's findings as part of reviewing the record."); *see Cuffee v. Berryhill*, 680 F. App'x 156, 159 (4th Cir. 2017) ("[a]n ALJ does not necessarily have to walk through each factor in order to comply with AR 00-1(4); rather, reviewing and evaluating all the evidence presented at the correct standard complies with the acquiescence ruling." (quoting *Grant v. Colvin*, 2014 WL 852080, at *7 (E.D. Va. Mar. 4, 2014))).

Regarding the prior, September 2018 decision by ALJ Miller and her own July 10, 2020 decision, ALJ Wordsworth stated the following:

> Additionally, a previous Administrative Law Judge issued an unfavorable decision in September 2018 finding the claimant capable of light exertional work with additional postural and mental limitations (Ex. 9A). In 2020, the undersigned issued a partially favorable decision finding the claimant disabled as of September 18, 2020 but not disabled prior to that time on the basis of *res judicata* (Ex. 12A). The findings regarding the claimant's impairments and the claimant's residual functional capacity for a wide range of unskilled light work with postural limitations are highly probative of the claimant's residual functional capacity because it is commensurate with the above-summarized evidence. The inclusion of the claimant's VA rating, as noted above, does not alter these findings since it is inconsistent with the claimant's mild arthritis, overall intact strength, conservative treatment and improved psychiatric functioning with treatment. As such, the previous findings of the claimant's residual functional capacity is entitled to great weight in accordance with Acquiescence Ruling 00-1(4), which clarifies *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987) in light of the more recent decision of *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999). The undersigned included slightly more restrictive non-exertional limitations to better account for the cumulative effect of her impairments and testimony received at hearing.

(R. 1099). Thus, as Claimant notes, ALJ Wordsworth appears to give the prior 2018 administrative decision "great weight," and stated that the prior RFC findings and limitations are "highly probative" of the RFC found in her 2021 decision.

9

Both Claimant and Defendant agree that ALJ Wordsworth incorrectly considered the prior decision pursuant to AR 00-01(4) and *Albright*. *See* Pl.'s Mem. [DE-15] at 4–7; Def.'s Mem. [DE-17] at 26–27. As Claimant states, because the 2018 prior decision was remanded and vacated by the court and vacated by the Appeals Council it was thus not a "final decision." *See* AR 00-1(4), 2000 WL 43774, at *4 ("[W]here a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight []"); *East v. Kijakazi*, No. 1:20-CV-650, 2022 WL 446429, at *8 n.9 (M.D.N.C. Feb. 14, 2022) ("The Court also notes that the 2018 ALJ decision is not entitled to any weight under Acquiescence Ruling 00–1(4) and *Albright*," as the prior ALJ determination was vacated by the Appeals Council, and thus was not the final agency decision), *report and recommendation adopted*, 2022 WL 2532440 (M.D.N.C. Mar. 17, 2022). Further, *res judicata* does not apply to the vacated prior decision. *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016). However, Defendant contends that this error was harmless, as ALJ Wordsworth assigned Claimant a more restrictive RFC in her 2021 decision, which is more beneficial to Claimant. Def.'s Mem. [DE-17] at 27.

Claimant contends that ALJ Wordsworth should have addressed conflicts between the prior 2018 decision and the 2021 decision, Pl.'s Mem. [DE-15] at 6–7, and, further, that ALJ Wordsworth could have reached a different conclusion had she not relied so heavily on the RFC from the prior, vacated decision, which shows that the error was harmful. Pl.'s Resp. [DE-18] at 5–6. Claimant additionally argues that ALJ Wordsworth's 2021 decision does not address the ambiguity as to why she found Claimant disabled in her 2020 decision, starting the day immediately after the period at issue here, September, 18, 2018. *Id.* at 6; Pl.'s Mem. [DE-15] at 6–7. Alternatively, Claimant states, if ALJ Wordsworth did not weigh the 2020 decision, remand

10

is also required.  Pl.'s Resp. [DE-18] at 6.

Claimant states that ALJ Miller's RFC analysis from the vacated 2018 decision and ALJ Wordsworth's RFC analysis from the 2021 decision mirror each other in many ways, both finding a reduced range of light work, which illustrates ALJ Wordsworth's heavy reliance on the 2018 decision.  Pl.'s Resp. [DE-18] at 5.  Notably, ALJ Woodsworth states that "[t]he findings regarding the claimant's impairments and the claimant's residual functional capacity for a wide range of unskilled light work with postural limitations are *highly probative* of the claimant's residual functional capacity because it is commensurate with the above-summarized evidence." (R. 1099) (emphasis added).  She continued, after writing that the "previous findings" of Claimant's RFC are entitled to "great weight," stating that "[t]he undersigned included slightly more restrictive non-exertional limitations to better account for the cumulative effect of her impairments and testimony received at the hearing."  *Id.*  In stating such, it is apparent that the ALJ strongly based her RFC in the 2021 decision on the vacated 2018 decision.  Had ALJ Woodsworth not done so, it is conceivable that she may have found a more restrictive RFC or found the Claimant disabled, especially in light of ALJ Woodsworth's 2020 decision finding Claimant disabled.  *See Suggs*, 2013 WL 466406, at *4 ("Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error.") (citing *Christian v. Comm'r of Soc. Sec.*, 2:08-CV-00047, 2009 WL 2767649 *6 (W.D. Va. Aug. 25, 2009); *Camp v. Massanari*, 22 Fed. Appx. 311 * 1 (4th Cir. 2001)); *Bennefield v. Saul*, No. 5:19-CV-87-FL, 2020 WL 633106, at *5 (E.D.N.C. Jan. 21, 2020) ("The ALJ's error is not rendered harmless because the evaluation of Plaintiff's total and permanent disability finding from the VA could reasonably be expected to have produced a different outcome in Plaintiff's RFC determination and, potentially, the ultimate issue of disability"), *report and recommendation adopted*, 2020 WL

11

624257 (E.D.N.C. Feb. 10, 2020); *Holliday v. Saul*, No. 4:19-CV-56-FL, 2020 WL 6437605, at *7 (E.D.N.C. July 29, 2020) (finding harmful error where the ALJ did not acknowledge or analyze treatment notes and consistent evidence from other examining sources, stating "[i]t is not 'inconceivable that a different administrative conclusion would have been reached' if ALJ Raleigh had considered and properly evaluated the evidence in this case") (citing *Suggs*, 2013 WL 466406, at *4), *report and recommendation adopted*, 2020 WL 5743091 (E.D.N.C. Sept. 25, 2020).

Further, remand is required to resolve inconsistencies and ambiguities regarding ALJ Wordsworth's evaluation, or non-evaluation, of her 2020 final decision finding Claimant to be disabled. It is unclear what weight, if any, she assigned to the 2020 decision. ALJ Wordsworth fails to adequately explain why her 2021 decision assigned a less limiting RFC for Claimant from 2015 to September 17, 2018, while her 2020 decision for the period commencing the following day, on September 18, 2018, found Claimant to be disabled. It is unclear if ALJ Woodsworth was referring to the 2020 decision, when she stated, "[a]s such, the previous findings of the claimant's residual functional capacity is entitled to great weight . . . ." (R. 1099).

Alternatively, if ALJ Wordsworth was not referring to her 2020 decision, a prior final decision unlike the vacated 2018 decision, then remand is still necessary to explain the weight given to the 2020 decision. *See Dodson v. Berryhill*, No. 5:17-CV-28-D, 2018 WL 896901, at *8 (E.D.N.C. Jan. 30, 2018), ("Of course, while the ALJ is not required to provide an in-depth explanation of his evaluation of the 2009 decision, his provision of no explanation for discounting the prior decision aside from the less than two-year passage of time between the periods of alleged disability at issue is insufficient.") (citing *Horton v. Berryhill*, No. 2:16-CV-00020, 2017 WL 4445986 at *7 (W.D. Va. Oct. 5, 2017) ("While a step-by-step explanation is not required for an ALJ to comply with AR 00-1(4), an ALJ's written decision must provide an explanation for

12

discrediting or failing to adopt past administrative findings favorable to the claimant.")), *report and recommendation adopted*, 2018 WL 890070 (E.D.N.C. Feb. 14, 2018); *see also Huey v. Comm'r of Soc. Sec.*, No. 3:20-CV-00341-RJC, 2022 WL 680217, at *4 (W.D.N.C. Mar. 7, 2022) (citing *Dodson*, 2018 WL 896901, at *8–9).

In failing to sufficiently explain the weight given to the 2020 decision, the ALJ failed to build "an accurate and logical bridge from the evidence to his conclusion[s]." *Dodson*, 2018 WL 896901, at *8 (citing *Monroe*, 826 F.3d at 189 (internal quotation marks omitted)); *see also Bailey v. Colvin*, No. 6:13-CV-29150, 2015 WL 769843, at *11 (S.D.W. Va. 23 Feb. 2015) ("Although AR 00–1(4) does not state that the ALJ must explicitly indicate his explanation, the Ruling does provide that the ALJ shall consider and weigh the prior ruling as evidence in reaching his decision in the second claim. The ALJ must provide some semblance of an explanation to enable judicial review of his decision. Accordingly, the undersigned finds that although the ALJ acknowledged AR 00–1(4), in his decision, he did not explain adequately how he considered and weighed the prior decision, especially regarding the RFC assessment and step two findings.")).

Accordingly, this case should be remanded such that the ALJ can sufficiently explain her treatment of the prior administrative decisions from 2018 and 2020.

B.     **The ALJ's Evaluation of the VA Disability Rating**

Claimant contends that the ALJ erred in failing to give substantial weight to Claimant's VA disability rating of 70 percent for PTSD and major depressive disorder based upon the presence of occupational and social impairment. Pl.'s Mem. [DE-15] at 7–13 (citing (R. 215)). Claimant argues that ALJ Wordsworth did not justify her deviation from the VA rating in contravention of *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012), and *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018), simply noting the differences between SSA and the VA, and then stating

13

that "Ms. Faison exhibited generally intact mental status examination findings with no adverse side effects from her psychotropic medications." Pl.'s Mem. [DE-15] at 9 (citing (R. 1099)).

In *Bird*, the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d at 343 (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

Here, the VA assigned Claimant a 70 percent disability rating for PTSD and major depressive disorder. (R. 210, 215). ALJ Woodsworth acknowledged Claimant's VA disability rating but gave it little weight in her 2021 decision. (R. 1098–99). The ALJ first noted differences in the VA rules and regulations and the SSA regulations and standards, acknowledging *Bird*, but found that deviation was appropriate, stating "[i]n the case at bar, the claimant's VA rating is given little weight because it is unsupported by the evidence of record. Notably, the claimant exhibited generally intact mental status examination findings, with no adverse side effects from her psychotropic medications. She also required treatment for chronic pain but did not exhibit significant loss of strength or sensation." *Id.* The ALJ later stated when discussing the prior administrative decisions, that the VA rating was "inconsistent with the claimant's mild arthritis, overall intact strength, conservative treatment and improved psychiatric functioning with treatment." (R. 1099).

Claimant argues, though, that the ALJ's assertion that Claimant's mental status examination

14

findings were "generally intact" does not accurately reflect the record. Claimant states that the VA assigned a 70 percent rating for PTSD and major depressive disorder based upon the presence of occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood; suspiciousness, depressed mood, suicidal ideation, disturbances of motivation and mood, spatial disorientation, impaired judgment, mild memory loss, chronic sleep impairment, difficulty in understanding complex commands, panic attacks occurring more than once a week, difficulty in adapting to stressful circumstances, difficulty in adapting to work, an inability to establish and maintain effective relationships, flattened affect, difficulty adapting to work like setting, anxiety and difficulty in establishing and maintaining effective work and social relationships. Pl.'s Mem. [DE-15] at 8 (citing (R. 215)). Claimant points to various evidence, starting with Dr. Edwin Hoeper's July 13, 2015 determination that with her PTSD, Claimant suffered from moderate compromise in ability to sustain social relationships following Claimant's suffering from nightmares two to three times per week. She had panic attacks two to three times per week; her PTSD symptomology included intrusive thoughts, startling easily, hypervigilance and intolerance of people being behind her; her recent memory was severely impaired; and she was depressed with little to no interest, had crying spells, was angry and agitated easily. *Id.* at 10 (citing (R. 327–28)).

Claimant notes Dr. Bailey's October 14, 2015 VA C&P exam[4] and that Bailey diagnosed Claimant with PTSD and major depressive disorder and noted occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment and thinking. *Id.*

---

[4] Claimant notes that the ALJ did not weigh the opinion of Dr. Bailey, stating that this opinion should be considered, citing *Rivera v. Saul*, No. 5:19-CV390-D, 2020 WL 4723170, at *3-5 (E.D.N.C. June 25, 2020), *report and recommendation adopted*, 2020 WL 4718382 (E.D.N.C Aug. 12, 2020) (ruling that check box forms prepared by the claimant's medical providers for the VA can be medical opinions and thus should be evaluated).

15

at 10–11 (citing (R. 340)). Claimant was noted to suffer from irritability, social isolation, and avoidance which caused issues maintaining relationships, and Claimant did not attend movies to avoid crowds, gave up basketball due to orthopedic pain, and stopped reading due to concentration problems. *Id.* (citing (R. 342)). Claimant suffered from recurrent, involuntary, and intrusive memories, recurrent distressing dreams, dissociative reactions and intense or prolonged psychological distresses and marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event with avoidance. *Id.* (citing (R. 344)). Claimant had depressed moods, anxiety, and suspiciousness, and experienced feelings of detachment from others, hypervigilance, exaggerated startle response, problems with concentration and sleep disturbance, her panic attacks occurred weekly, she experienced chronic sleep impairment, mild memory loss, disturbance in motivation and mood, and difficulty with work relationships and adapting to stressful circumstances. *Id.* (citing (R. 345)). Mental status examination ("MSE") showed Ms. Faison displaying an irritable mood and fair judgment. *Id.* (citing (R. 346)). Claimant left her job after her psychiatrist recommended it—it was becoming too stressful and she had to use 10–15 days per month for mental health symptoms or appointments during the last year. *Id.* (citing (R. 350)).

Claimant points to records from Dr. Hoeper from May 2016 where she was noted for having weekly nightmares, panic attacks, flashbacks and night sweats, and her depression was worse. *Id.* (citing (R. 421)). On mental status examination, Claimant displayed distractible attention, depressed/irritable mood and flat affect. *Id.* (citing (R. 422)). September 2016 notes reflect daily nightmares and panic attacks, weekly flashbacks, anger, depression, worse short-term memory, that Claimant was easily distracted, had depressed mood, and had flat affect, that her PTSD was worse, and that she was not socializing, *id.* (citing (R. 455–57)).

16

Claimant next discusses follow ups with the VA in 2017. On April 20, 2017, Claimant returned to the Durham VA for medication management; she reported a stable mood and her appetite was good; she continued to experience symptoms of panic, anxiety, flashbacks and sweats, and was not hypervigilant; on mental status examination, she displayed coherent/spontaneous speech, euthymic mood, congruent affect, and denied suicidal ideation; and her insight and judgment were fair. *Id.* at 12 (citing (R. 868–69)). In October 2017, she related feelings of hopelessness and easy irritability to the VA and her nightmares were occurring about three times per week. *Id.* (citing (R. 1057)). Later in 2017 and into 2018, Claimant states, her PTSD was described as stable in June of 2017 with her anger and depression worse; and she displayed a depressed mood, flat affect, and was distractible on mental status examination. *Id.* (citing (R. 811)). On February 26, 2018, Claimant was noted for broken sleep five to six days per week, weekly nightmares, one to two panic attacks weekly, one to two flashbacks weekly, night sweats weekly, and ongoing anger issues; her depression was worse 90 percent of the time, and she had flat affect, depressed mood, was not socializing, and was distractible. *Id.* (citing (R. 955–58)). In sum, Claimant contends, the evidence does not show that Claimant's mental status examinations were "intact."

Defendant, on the other hand, points to various occasions where the ALJ noted that Claimant's psychiatrist determined that she was "fairly stable emotionally" as of January 2017; she denied mood changes, anxiety, memory changes, or depression; she maintained appropriate eye contact, cooperative behavior, goal directed and thoughts and intact memory; appropriate mood and affect; she required treatment for chronic pain but did not exhibit significant loss of strength or sensation; she demonstrated full strength and a steady gait when examined in April 2017; she admitted to improved pain levels; she exhibited benign mental status examination

17

finding; she did not demonstrate significant deficits in her mental status examination findings and her treatment regimen remained unaffected; she described improved energy and good moods without any adverse side effects to medication; results of a mental status examination illustrated her appropriate appearance, good eye contact, normal speech, and logical thought processes; and she appeared pleasant, cooperative, and conversational during an April 2018 group therapy session. Def.'s Mem. [DE-17] at 28–29 (citing (R. 1096–99)). As such, Defendant contends, ALJ Wordsworth considered the VA rating and the VA records and properly gave the rating little weight. *Id.* at 29.

Here, the ALJ's justification for deviating from the VA's decision was sufficient under *Bird*, as the court can trace the ALJ's reasoning. *See Monroe*, 826 F.3d at 189 (explaining the ALJ must "build an accurate and logical bridge from the evidence to his conclusion").

First, "simply noting the fact that the VA and SSA employ different standards and that the ultimate disability decision is reserved to the Commissioner is insufficient to justify deviation under *Bird*." *Hack v. Saul*, No. 5:19-CV-508-FL, 2020 WL 7391295, at *4 (E.D.N.C. Sept. 9, 2020), *report and recommendation adopted*, 2020 WL 7388428 (E.D.N.C. Dec. 16, 2020); *see Nguyen v. Colvin*, No. 5:14-CV-227-D, 2015 WL 5062241, at *7 (E.D.N.C. Aug. 10, 2015) ("[T]he reasons cited by the Commissioner—different rules and different standards—would apply to every case and thus cannot be relied upon to avoid scrutiny of the [agency's] decision under *Bird's* new presumptive standard."), *adopted by* 2015 WL 5089060 (E.D.N.C. Aug. 27, 2015).

Secondly, the ALJ articulated that deviation was also appropriate "because it is unsupported by the evidence of record," and that "[n]otably, the claimant exhibited generally intact mental status examination findings with no adverse side effects from her psychotropic medications." (R. 1099). "Only where the ALJ points to clear reasons for deviation can the ALJ give less weight to

18

a VA rating." *Mullen v. Berryhill*, No. 4:16-CV-27-BO, 2017 WL 3412142, at *2 (E.D.N.C. Aug. 8, 2017); *Hildreth v. Colvin*, No. 1:14CV660, 2015 WL 5577430 (M.D.N.C. Sept. 22, 2015).

Earlier in the RFC discussion, the ALJ noted that Claimant testified that she could not work due to PTSD, bipolar disorder, and low back pain. (R. 1095). The ALJ cited various evaluations and other evidence (including multiple VA records) related to Claimant's PTSD and depression, on which the VA rating is based. (R. 210, 215). The ALJ stated that a July 2015 psychiatric evaluation noted complaints of nightmares, flashbacks to traumatic events, weekly panic attacks, insomnia, poor memory, hypervigilance, social isolation, crying spells, and diminished energy; however, it indicated that Claimant maintained appropriate eye contact, cooperative behavior, goal-directed thoughts, and intact memory, with a global assessment of functioning (GAF) score of 40, which was indicative of major impairment; and stated that medications were prescribed for PTSD and major depression, and that August 2015 notes from the VA "documented diagnoses of PTSD, depression, bipolar and lumbago." (R. 1096) (citing (R. 327–37, 357–420)).

The ALJ noted that in September 2015, Claimant was distractible and endorsed worsening psychological issues, and at that time her medications were increased. *Id.* (citing (R. 421–54)). An October 2015 psychiatry report indicated that Claimant's depression was "mild" in severity, her mental status examination revealed that she was alert, oriented, and well groomed, that while she described a bad mood, she maintained an appropriate affect with "fair" insight, and she answered questions without difficulty in remembering information. *Id.* (citing (R. 338–56)).

The ALJ stated that Claimant returned to her psychiatrist in May 2016 and was distractible, but overall had intact mental status examination findings. *Id.* (citing (R. 421–54)). The ALJ noted that Claimant saw her primary care provider in July 2016 for pain, but denied anxiety, depression, or memory changes. *Id.* (citing (R. 463–807)).

19

In January 2017, Claimant's psychiatrist determined Claimant was "fairly stable emotionally," and in February 2017 Claimant returned to her primary care provider for low back pain but denied mood, anxiety, depression, or memory changes. (R. 1097) (citing (R. 808–15). The ALJ stated that in another February 2017 appointment Claimant noted she was able to "go on a cruise without any difficulty," and that Claimant admitted to stable mood, sleep, and appetite. *Id.* (citing (R. 816–945)).

The ALJ noted that a psychiatry report from June 2017 indicated that Claimant's PTSD was "stable," but her depression had worsened, though Claimant advised she was getting married that weekend. *Id.* (citing (R. 816–945). Claimant's mental status examination was generally benign, other than distractibility and sad mood, and no changes were made to her treatment. *Id.* (citing (R. 808–15)).

Finally, the ALJ stated that January 2018 mental status examination findings were also benign. *Id.* (citing (R. 959–1085)). A February 2018 psychiatry note described Claimant as depressed with a flat affect, but Claimant did not demonstrate significant deficits in mental status examination findings and treatment regimen remained unaffected. *Id.* (citing (R. 955–58)). The ALJ discussed that in March 2018 Claimant described improved energy and good moods, without adverse side effects from medication, and a mental status examination illustrated appropriate appearance, good eye contact, normal speech, and logical thought processes; and in an April 2018 group therapy session, Claimant appeared pleasant, cooperative, and conversational. *Id.* (citing (R. 959–1085)).

The ALJ concluded that regarding Claimant's mental impairments, Claimant received psychotropic medications and therapy. While notes showed periods of increased depression, anxiety, or mood changes, Claimant admitted to improvement with medication and did not require

20

in-patient psychiatric treatment, testified she attended church twice a week, and stated that she would dance at church were it not for her physical impairments, and reported that she went on a cruise for vacation. (R. 1097–98). The ALJ stated, "this degree of activity is not consistent with the level of disabling conditions alleged during other portions of the claimant's testimony." (R. 1098).

Claimant's VA rating included disability assignments regarding Claimant's PTSD and depression. (R. 210, 215). Thus, the court can trace the ALJ's reasoning, that the mental status examination findings, Claimant's continued treatment with medications without adverse effects, and Claimant's activities all could support a lesser weight afforded to the VA rating for Claimant's PTSD and depression. Accordingly, the ALJ sufficiently explained how the record clearly demonstrates that giving less-than-substantial weight to the VA disability rating.

Accordingly, the ALJ did not err in her treatment of the VA rating—she acknowledged contradictory evidence and explained her reasoning. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted).

The court declines to address Claimant's remaining assertions of error. *See e.g., Green v. Kijakazi*, No. 5:21-CV-1-RJ, 2022 WL 866404, at *9 (E.D.N.C. Mar. 23, 2022) (declining to reach claimant's constitutional arguments where remand was otherwise required) (citation omitted); *Harris v. Colvin*, No. 2:15-CV-24-RJ, 2016 WL 5719837, at *5 (E.D.N.C. Sept. 30, 2016) (declining to address additional issues raised by Claimant where issue discussed by the court required remand); *Gainey v. Colvin*, No. 7:14-CV-1-RJ, 2015 WL 1354555, at *9 (E.D.N.C. Mar. 24, 2015) (same).

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-14] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-16] is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this Order.

So ordered the 17th day of October 2022.

Robert B. Jones, Jr.
United States Magistrate Judge

22